Bowles' Heirs *v.* Rouse, adm'r.

SAME *v.* SAME.

*Error to Peoria.*

An administrator seeking to subject real estate to sale for the payment of the debts of the deceased, may give a general notice by publication of his intention to apply for leave to sell, without naming particular persons as defendants, the statute having regard to *all* persons interested, whether defendants or not.

In a notice of an application for leave to sell real estate, where unknown heirs were interested, the words, "State of Illinois," were not mentioned with the words, "County of Peoria." There was an appearance by the only known heir in the case: *Held,* that the defect was cured by such appearance.

A decree on a petition by an administrator for the sale of lands directed the sale of the whole of the land, or so much thereof as would pay the debts: *Held,* to be sufficient, and, *further*, that it was unnecessary that it should state what was the particular interest the deceased had in the land ordered to be sold.

The provisions of the first section of the Act supplemental to the Statute of Wills, approved March 1, 1833, is not restricted in its application to cases of the death of resident proprietors of real estate, but embraces all classes of persons.

The proper county in case of non-residents' dying, leaving lands in this State, is the county where such lands or a part of them lie, and in such county administration is to be granted.

BILL IN CHANCERY, for leave to sell real estate, &c. filed by the defendant in error against the plaintiffs in error, in the Peoria Circuit Court, and heard before the Hon. John D. Caton, at the October term 1843. A sale was ordered, &c.

The facts and proceedings in the case are sufficiently stated in the argument of the counsel for the plaintiffs in error, and in the Opinion of the Court.

*O. H. Browning & N. Bushnell,* for the plaintiffs in error, filed the following written argument:

It appears on the face of the petition in this case, that Robert Bowles was a citizen of New York; that he died there some years ago, intestate; that he had no personal estate of any kind in this State, neither goods nor chattels,

rights nor credits. It is not shown that he was ever in the State of Illinois. That at the time of his death he was the owner of thirty eight quarter sections of land in Illinois, three of which were in the county of Peoria, six in Adams, five in Hancock, five in Fulton, five in Henderson, &c. That on the 11th of April, 1842, (but how long after Bowles' death does not appear, only by the statement that he died some years before,) the defendant in error was appointed administrator of the estate of said Bowles, by the Probate Court of Peoria county. That on the 15th April, 1842, a claim was allowed by said Court against said estate, in favor of one Joshua J. Moore, for $1360·34. That there are no assets to pay this debt, that the names of Bowles' heirs are unknown, and they are made parties to the petition by the style and description of "the unknown heirs of Robert Bowles, dec'd."

On this state of case ought the Circuit Court of Peoria county to have made a decree authorizing and directing the sale of the said lands? We insist not, for the following reasons:

I. Because the Probate Court of Peoria county had no jurisdiction to grant administration upon the estate of said Bowles, and having assumed to do so without authority, the grant was void, and conferred no power upon the pretended administrator to act in the premises. .

At Common Law, the right to grant administration was generally determined by the domicil of the intestate at the time of his decease. Thus, if a man had two houses in different dioceses, and resided chiefly at one, but sometimes went to the other, and being there for a day or two, died, having no *bona notabilia* in the first house, probate should be granted by the bishops of the diocese in which the testator died, for he was commorant there, and not there as a traveller. Toll. on Ex'rs, 52; *Hilliard* v. *Cox*, 1 Salk. 37.

And if an intestate died, having *bona notabilia* in several dioceses, administration was granted by the archbishop of the province. 1 Comyn's Dig. title "*Adm'r*," B. 3. But if he had not *bona notabilia*, administration was granted by the

bishop of the diocese where he died. Or, if he died within a peculiar, by the judge of the peculiar jurisdiction. 1 Com. Dig. title *"Adm'r,"* B. 5; 3 Bac. Abr. 36.

It is not contended that these rules are to govern in the grant of administrations here, but an understanding of them may be of service in construing and applying our statutes upon the same subject.

The second section of the Act relative to wills and testaments, Rev. Code, 1833, provides that proof of the execution of wills shall be made before the Probate Court of the proper county.

By the 17th section, if a testator shall have a mansion house, or known place of residence, his will shall be proved in the Court of probate of the county wherein such mansion house, or place of residence shall be. If he has no known place of residence, and lands are devised by the will, it shall be proved in the Court of Probate of the county wherein the lands lie, or in one of them, if such lands lie in several different counties. If he has no known place of residence, and no lands are devised in the will, then it shall be proved either in the county where the testator died, or wherein the greater part of his estate shall lie.

This section ascertains what is meant by the term "proper county," wherever it occurs in other parts of the law, either in its application to the probate of wills, or the granting of administration.

The 51st section, after providing that administration shall be granted to the husband upon the goods and chattels of the wife, and to the widow, or next of kin, upon the goods and chattels of the husband, &c., adds, that in all cases where such intestate shall have been a non-resident, or without a widow, next of kin, or creditors in this State, but having property within this State, administration shall be granted to the public administrator of the proper county, and to no other person.

The 53rd section—that when any non-resident shall die intestate, leaving goods and chattels, rights and credits, or either, in this State, and no widow, next of kin, or creditor

within the State, administration shall be granted to the public administrator of the county in which the goods and chattels, rights and credits and effects shall be found.

These are all the provisions found in the law of 23d January, 1829, relating to the grant of administration, which are supposed to be pertinent to this case.

The question then arises by virtue of the laws above referred to, had the Probate Court of Peoria county power or jurisdiction to appoint the defendant in error administrator of the estate of Robert Bowles, deceased?

The following positions are thought to be fairly deducible from the laws cited.

1. That where a deceased person was, at the time of his death, an inhabitant of this State, the power of granting administration upon his estate, appertains exclusively to the Probate Court of that connty in which the deceased dwelt.

2. That if the intestate shall be a non-resident, leaving goods and chattels, rights and credits, or either, in this State, then the power of granting administration upon the estate can only be exercised by the Probate Court of the county in which the goods, chattels and effects of the intestate may be found at the time of his death.

3. That if such non-resident intestate shall leave no widow, next of kin, or creditor in this State, then administration shall be granted to the public administrator of the county in which the goods, chattels and effects shall be found, and to no other person.

4. That when a non-resident intestate leaves lands only in this State, and neither goods nor chattels, rights nor credits, then there is no power or jurisdiction in any of the Probate Courts of this State to grant administration upon his estate.

The view taken of the law in this fourth proposition, is sustained by a legislative construction. In 1833, an Act was passed amendatory to the Act of 1829, for the express purpose of enabling Probate Courts to grant administration, when resident intestates left land, but no personal effects

in this State.   The provision is, "that in all cases where any person shall die seized or possessed of any real estate, within the State, and shall have no relative, or creditor within this State, or if there be any, who will not administer upon such deceased person's estate, it shall be the duty of the Judge of Probate, upon the application of any person interested therein, to commit the administration of such estate to the public administrator of the proper county."

Are non-resident intestates embraced by this section?  They are not.   When general terms are adopted, "as when any person shall die seized or possessed of any real estate within this State," it must be meant of persons dying within this State, within the jurisdiction of some of the Probate Courts, and will not, by implication, be extended to the citizens of other States.   In all the provisions of the law when non-residents are intended they are expressly mentioned, and when not mentioned, residents alone must be understood.

This construction is supported by the language adopted in the latter part of the section above quoted, "administration shall be granted to the public administrator of the proper county."   What is the proper county, and how is that to be determined?   It has already been shown that in England the proper jurisdiction is determined by the domicil of the intestate.   So by our law, the proper county is the county where the intestate resided.   No other rule is given when general terms are used, by which the proper county may be ascertained; and the terms "proper county," and "place of residence of intestate," are used indifferently, and as importing the same thing throughout the law.

The jurisdiction of the Courts of Probate is nowhere made to depend upon the locality of the land of the intestate.   It could not be so, for the lands might lie in many counties; administration might be granted in several, and granted simultaneously, and in what way could this conflict of jurisdiction be settled or reconciled?   It is not to be supposed that if the Legislature had intended non-resident intestates, they would have left the jurisdiction thus involved in difficulty, but would have given some rule by which to

determine what was meant by the proper county. If it is answered, the county in which the greater part of the lands lie, still the objection to the jurisdiction of the Probate Court of Peoria county is not obviated, for a much greater quantity of the land in this case is situated in each of several other counties than in Peoria.

The intestate then having been a citizen of another State, and having died in another State, leaving neither goods nor chattels, rights, credits nor effects in this State, the Probate Court of Peoria county could not lawfully grant administration of his estate; and having assumed and exercised a jurisdiction which it did not possess, the grant was void, and all acts done under, and by virtue of the grant, are likewise void.

Administration shall be void if granted by an incompetent authority, as by a bishop, where the intestate had *bona notabilia*, or by an archbishop, of effects in another province. 3 Bac. Abr. 36; Toll. Ex. 120; 1 Salk. 39; 1 Peere Williams, 44; Cro. E. 460; 1 Com. Dig., title *"Adm'r,"* B. 3, and B. 5.

And if the Probate Court had no jurisdiction in this case, then the grant of administration was void *ab initio,* and all the acts of the grantee are void. *Griffith* v. *Frazier,* 3 Cond. R. 12; *Holyoke* v. *Haskins,* 5 Pick. 25, 27; same case, 9 do. 263; *Sigourney* v. *Sibley,* 22 do. 508; *Wales* v. *Willard,* 2 Mass. 124; *Cutts* v. *Haskins,* 9 do. 583; *Embry* v. *Miller,* 1 A. K. Marsh. 300; *Pawling* v. *Speed's Executors,* 5 Monroe, 583; *Nelson's Lessee* v. *Griffin,* 2 Yerger, 624.

II.  The petition is filed against the unknown heirs of Robert Bowles, dec'd, which is unauthorized by law. The proceedings should have been against the heirs, and persons interested, by name, and if any of them were minors, a guardian *ad litem* should have been appointed by the Court. See Statute of Wills and Testaments, Rev. Code, 1833, §§ 98, 103.

The Act authorizing suits against persons unknown, relates to applications for dower, partition of real estate, and suits in Chancery. Gales' Stat., 25-6-7.

If applicable to this case, it is under the description of

suits in Chancery, which clearly relates only to such suits in Chancery as might be brought independent of statutory enactments. Where others are intended, they are enumerated in the Act. This proceeding not being mentioned, is not embraced, for it is not a suit in Chancery in contemplation of law. A suit in Chancery must be commenced by bill, filed before process issues. This is a petition for the sale of real estate by an administrator, which may be commenced by giving notice in the prescribed mode, and by filing the petition at, or during the term of Court to which the notice relates.

The proceeding of an administrator to convert the real estate of an intestate into assets, is a creation of the statute. It had no existence before, and the statute has appointed the forms of that proceeding, which must be strictly pursued. Every statute which limits a thing to be done in a particular form, although it be done in the affirmative, includes in itself a negative, viz: that it shall not be done otherwise. And this is clearly so of all statutes which, in affirmative words, appoint or limit an order, or form, in things which were not known to the Common Law. *Atkins* v. *Kinnan*, 20 Wend. 250; *Ford* v. *Walsworth*, 15 do. 450.

A special power granted by statute, affecting the rights of individuals, and which divests the right of real estate, ought to be strictly pursued, and should appear to be so on the face of the proceedings. *Smith* v. *Hileman*, 1 Scam. 325. And where a bill is filed against unknown heirs, publication made, and decree pronounced against them, except in cases expressly provided for by law, the whole proceeding is *coram non judice*, and void. *Hollingsworth* v. *Barbour* 4 Peters, 474, *et seq.*; *Hynes* v. *Oldham*, 3 Monroe, 267.

III. No sufficient notice of the intention to present a petition for the sale of the real estate was given. The notice is defective in the following particulars:

1. It does not show where the suit is pending. Peoria county, but no State is mentioned, and the State of Illinois will not be intended. The Court cannot take notice that there is not a Peoria county in some other State. There

may be, and the notice does not give such information as would enable the persons interested to determine where the suit is depending.

2. The advertisement gives no notice of an intention to present a petition to the Circuit Court for the sale of the whole, or so much of the real estate of the intestate as will be sufficient to pay his debts, nor of an intention to present a petition for any such purpose; nor does it request all persons interested in the real estate to appear and show cause why it should not be sold. All of which are, by law, required to be specified in the notice. Rev. Code, 1833, § 98.

3. It does not show what real estate is proceeded against, nor for what purpose.

The notice, then, which the law requires, not having been given, the proceedings of the Court in the case were void, for it may be laid down as a general rule, that whenever the Court rendering the decree or judgment has not jurisdiction, or if rendered against a person in his absence, without having the warning which the law requires, the decree or judgment will be void. *Hynes* v. *Oldham*, 3 Monroe, 267.

IV. The decree is erroneous in the following particulars:

1. It orders a sale of all the lands, or so much thereof as may be necessary for payment of the debts, leaving it to the administrator to determine how much was necessary, instead of ascertaining that fact by the decree, which should have been done. Rev. Code, 1833, 644, § 99.

2. It states that it appeared to the Court that Robert Bowles was the owner, or had an interest in the lands, and then orders the sale of said lands. It should have ascertained his interest, whether he was the owner of all, or an undivided part, and have directed the sale accordingly.

3. It does not show, as required by law, that the personal estate of the deceased, was insufficient for the payment of his debts, but only "that there was no personal property or assets, in the hands of the administrator for the payment of claims."

The record shows that there was an appearance below for Ellen Catherwood, who is now made a party to the record,

and it will no doubt be insisted that by that appearance we are precluded from urging some of the objections which we rely upon for a reversal of the decree.

She was, at the time of that appearance, and still is a *feme covert*, and could not, therefore, bind either herself or husband by that appearance.

Before a married woman can defend a suit separately from her husband, she must first obtain leave of Court to answer separately. Mitford's Pl. 105; *Perine* v. *Swaine and wife*, 1 Johns. Ch. R. 24.

And a wife becomes a substantial party to the suit, only from the time of the order that she should answer separately. *Garay* v. *Whittingham*, 1 Sim. & Stu. 163.

And in a suit against husband and wife, the service of the subpœna on the husband alone is good service on both. *Ferguson* v. *Smith*, 2 Johns. Ch. R. 139.

*A. Williams*, and *J. Butterfield*, for the defendant in error.

The appearance of Ellen Catherwood in this case was a sufficient bar to the objection of want of notice. She had filed a demurrer, which, being overruled, a plea was filed.

It is said that the decree is wrong. It was as definite as the circumstance of value would admit. The supervisory power of the Court was a sufficient safeguard, &c.

The objection to the administrator should have been made before the Probate Court, by parties interested, and a revocation of the letters prayed for. It is now too late to raise it.

The Opinion of the Court was delivered by

KOERNER, J. At the October term of the Peoria Circuit Court, 1843, Rudolphus Rouse filed a bill of complaint on the Chancery side of said Court, setting forth that one Robert Bowles, late of New York city, had departed this life intestate several years ago; that the names of the heirs of said Bowles were unknown to complainant, as also their place of residence; that on the 11th day of April, 1842, he had been appointed, by the Probate Justice of Peoria county, administrator of said Bowles, and that a claim had been

filed and allowed against the estate in favor of one Joshua J. Moore, for the sum of $1316·34. The bill further states that said Bowles left no personal property of any kind in the State of Illinois, but, at the time of his decease, was the owner of numerous tracts of land in said State, which are particularly described in said bill, and contain several thousands of acres, some of which tracts are situate in said county of Peoria. The bill prays for an order to sell said lands, for the payment of said debts, and general relief.

The notice in this case was given in pursuance of the fifth section of the Act authorizing suits against persons whose names are unknown, approved 27th February, 1837, and the fifth section of the Chancery Practice Act of 1833. Gale's Stat. 257 and 140. This notice also complied, in regard to the length of time for which it must be given, and to the number of publications in a newspaper, with the 98th section of the Statute of Wills of 1829. Ibid. 711.

Ellen Catherwood, styling herself one of the heirs of Robert Bowles, appeared by counsel, and filed a demurrer to said bill or petition, which was overruled by the Court, and, on leave, a plea was then filed for the defendants, as the record states, denying that Rouse was, (at the time of filing the plea,) the public administrator of Peoria county, which plea, having been set down for argument, was decided to be insufficient. The certificate of the Probate Justice, showing indebtedness, &c. was produced, and a decree made for the sale of the lands mentioned in said bill, or so much thereof as should be necessary to pay said debts and costs, upon giving six weeks notice of time and place of such sale.

The errors assigned on this record are:

1. That the Court had no jurisdiction;

2. The notice of pendency of suit was not sufficient;

3. The petition did not present such a case as would authorize the Court to make a decree in the premises;

4. The Court erred in overruling demurrer and plea; and,

5. The decree is informal and erroneous.

The objections presented by the first and second assignments of error are, in our opinion, not well founded. The

law authorizing an administrator to apply for a sale of real estate of his intestate provides that "he shall present his petition to the Circuit Court; (Sec. 98, Wills; Gale's Stat. 711;) and (Sec. 99,) that it shall be the duty of the Circuit Court, at the time and place specified in the notice, to hear and examine the allegations and proofs of such administrator, or such other persons interested in said estate as may think proper to resist the sale, and, upon due examination, &c. to order and direct the sale of the whole, if necessary, but if not, then of so much of the said real estate, from time to time, as will be sufficient to pay such debts." Under these provisions, it is not perceived why an administrator may not give to his petition the form of a bill in Chancery. It is not usual to do so, and was probably adopted in this case for the purpose of making unknown persons parties to this petition, but we can see no objection to it, as the same notice, and, in fact, longer notice is required in this form of proceeding, and as the defendants cannot possibly lose any advantages whatever which are secured to them in the more ordinary proceeding by petition.

The counsel for the plaintiffs in error seem to think that if the administrator had proceeded in the usual way, he would have had to make the heirs of Bowles defendants *by name,* and could not have given notice to persons unknown. But this is a misapprehension. The administrator may give a general notice, by publication, of his intention to apply for the sale of real estate, without naming particular persons or defendants, and in this he is warranted by the language of the statute, which says, that said notice shall request all persons interested in said real estate, to show cause why it should not be sold, and which allows any one, whether made a defendant or not, to resist such sale, provided he has any interest therein. See said sections 98 and 99. And indeed such is the general practice in our State. There is a slight defect in the notice in this, that the words "State of Illinois" are not added to the words "County of Peoria." But as the only known heir, Ellen Catherwood, appeared and demurred, and all the defendants, if there were more than

one, put in their plea, all other insufficiencies in the notice, if there be any, were waived. Plaintiffs' counsel insist in their argument, that the appearance of Ellen Catherwood was not binding, because she was at the time of her appearance, and still is a married woman. The record of the Circuit Court is silent upon this subject, and we have no right to presume any female to be married, unless the fact of her marriage be established. We can see no informality or error in the form of the decree as is alleged by the fifth error assigned. The order is for the sale of the whole of the land, or so much thereof as will pay the debt. The Court might have directed the sale of a part only, and then it would have been necessary to specify what part. In this case the decree means no more nor less than this, that all the land should be sold, that in case, however, a part of the premises should bring enough the administrator should sell no more, a direction which was only expressive of what the duty of the administrator already required of him, independent of any order to that effect. Nor was it necessary, as it is contended, for the Court to determine in the decree the particular estate which Bowles had in the land. The bill alleges that he died the owner of the land, and as the bill was taken as confessed, the defendants declining to answer further, the fact of ownership was sufficiently proved for the purposes of this order.

The main objection to this order, however, is presented by the third and fourth assignments of error. It is contended that the petition does not show such a case, as would authorize the Court to act in the premises, because the Probate Justice of the Peace had no power to grant letters of administration at all, where a non-resident dies leaving no personal, but only real estate within our State. It is true that the Statute of Wills of 1829, made no provision for the granting of administration in any case where the intestate, whether a resident or non-resident, left no personal estate. It provided in the 53d section, "that whenever any person shall die intestate in any county in this State, or when any non-resident shall die intestate, leaving goods and chattels, rights and credits,

or either in this State, and no widow or next of kin, or creditor or creditors shall be living within this State, administration of the goods and chattels, &c., shall be granted to the public administrator of the county in which such intestate died, or in which the goods and chattels, &c. shall be found, in case such intestate shall have been a non-resident."

In order to remedy this omssion and to carry out the principle of converting realty into personalty, for the purpose of discharging debts, a principle which our Legislature has been always anxious to establish and extend, a supplemental Act was passed in 1833, Gale's Stat. 723, the first section of which reads as follows: "In all cases where any person shall die seized or possessed of any real estate within this State, or having any right or interest therein, and shall have no relative or creditor within this State, or if there be any, who will not administer upon such deceased person's estate, it shall be the duty of the Judge of Probate, upon the application of any person interested therein, to commit the administration of such estate to the public administrator of the proper county, and such public administrator may be made a party to any suit or proceeding in law or equity, and shall to all intents and purposes be liable as the personal representative of such deceased person." We cannot agree with the plaintiff's counsel, that this section only applies to cases where residents die seized or possessed of real estate. The language is broad and comprehensive, embracing all classes of persons, and the necessity of providing for such administration is certainly much greater in cases of non-residents dying intestate, than in cases of residents, because the latter are seldom wholly destitute of relatives in the State in which they die. We freely admit that this law may be much abused, but still we cannot for this reason repeal it judicially. Courts should be extremely cautious in applications of this kind, and should carefully watch the interests of relatives, so as to prevent a sacrifice of the estate by all the means which the law has placed in their hands for the protection of the fatherless, against the cupidity of heartless creditors, or the devices of mere pretenders.

The counsel for plaintiffs in error attach great weight to the words "proper county," used in this section, and argue from that expression, that non-residents could not be meant to be embraced by the law, as no county could be said to be the proper county for administration on their estate, since they had no domicil in the State nor personal property any where within it. We cannot see any difficulty in these words. The proper county in case of non-residents dying, leaving lands in this State, is the county where such lands or a part of them lie, and in such a county administration is to be granted.

There is nothing, however, in the case before us, which makes it absolutely necessary to consider the said Bowles as a non-resident at the time of his death. The expression used in the bill, "late of New York city," might have been applied to him, although he may have died in Illinois. But whether he was a resident or not, the letters were properly granted in Peoria county, some of the lands being situated there.

The plea filed by the defendants was properly overruled. It did not deny that Rouse was public administrator at the time administration was granted to him. The certificate of the Probate Justice filed with the pleadings, showed that the was such administrator when he took out the letters. The plea was also in other respects informal and insufficient.

We have examined the proceedings in this case with much care, and with a certain degree of jealousy, as we are well aware that great injustice may be committed under the provisions of the law as it now stands, and as in this case we could not shut our eyes to the fact, that a large estate, nominally so at least, has been sold for the satisfaction of a comparatively small debt, proved before the Probate Justice, perhaps, without notice to any one, or without resistance by any one, but yet we have not been able to discover any error or irregularity which would justify the Court in reversing the order and in avoiding the sale.

The decree is, therefore, affirmed with costs.

*Decree affirmed.*